2012 ND 158

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Anthony PERALES, Defendant and Appellant.**

**No. 20120114.**

Supreme Court of North Dakota.

July 26, 2012.

**120**

Fallon M. Kelly, State's Attorney, Lisbon, ND, for plaintiff and appellee.

Don R. Krassin, Wahpeton, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Anthony Perales appeals an amended criminal judgment revoking his probation and imposing a sentence of fourteen years incarceration followed by five years supervised probation. Perales argues that the sentence was illegal because the district court lacked authority to impose probation and that fourteen years incarceration is cruel and unusual punishment. We reverse and remand for further proceedings.

I

[¶ 2] On March 7, 2006, nineteen-year-old Perales was charged with class AA felony gross sexual imposition for engaging in sexual acts with a thirteen-year-old girl between December 24, 2005 and March 6, 2006. On December 20, 2006, Perales entered a guilty plea. On August 17, 2007, the district court sentenced Perales to ten years incarceration with credit for time served. The district court suspended the entire sentence and placed Perales on five years supervised probation.

[¶ 3] In June 2008, the State petitioned to revoke Perales' probation. The State alleged Perales committed several probation violations, including having contact with a child younger than eighteen. At a July 2008 revocation hearing, Perales admitted to several violations, including having continual contact with a seventeen-year-old girl. The district court revoked Perales' probation and resentenced Perales to ten years incarceration with all but three years and six months suspended for five years supervised probation. Perales served his prison sentence and was released.

[¶ 4] In December 2011, the State again petitioned to revoke Perales' probation. The State alleged Perales violated probation by failing to comply with sex offender registration requirements, consuming alcohol, loitering near a school and having a sexual relationship with a sixteen-year-old girl. At a February 2012 revocation hearing, Perales admitted to failing to update his sex offender registration by reporting termination of his employment and to drinking alcohol. He denied the remaining allegations. The State called three witnesses including Perales' probation officer, a detective who investigated Perales' relationship with the girl and the girl. The girl testified she was involved in a sexual relationship with Perales when she was sixteen years old. The district court found by a preponderance of the evidence that Perales had a sexual relationship with the girl and spent time at or near her school. The district court found Perales violated his probation and resentenced Perales to fourteen years incarceration with credit for time served followed by five years supervised probation.

II

[¶ 5] Perales argues the sentence was illegal because the district court exceeded its authority by imposing a third five-year period of probation. He argues the district court lacked authority to impose any additional probation after revoking his probation for the second time. The State concedes our decision in *State v. Stavig*, 2006 ND 63, 711 N.W.2d 183, limited the district court to imposing two probationary periods but argues the district court had authority to order Perales to complete the unserved portion of a previous probationary term.

[¶ 6] A sentence is illegal if it exceeds the maximum term authorized by statute. *State v. Eide*, 2012 ND 129, ¶ 10, 818 N.W.2d 711. Section 12.1–32–07(6), N.D.C.C., authorizes the district court to resentence a defendant who violates a probation condition to any sentence available under N.D.C.C. § 12.1–32–02 or N.D.C.C. § 12.1–32–09 at the time of initial sentencing. *Davis v. State*, 2001 ND 85, ¶ 11, 625 N.W.2d 855. Therefore, following the second probation revocation, the district court could impose any sentence available when Perales was originally sentenced for violating N.D.C.C. § 12.1–20–03(1)(d) by engaging in a sexual act with a thirteen-year-old girl when he was nineteen years old. The original criminal judgment indicates and, the parties agree, that Perales was initially sentenced for committing class AA felony gross sexual imposition, an offense with a maximum penalty of life imprisonment without parole. *See* N.D.C.C. § 12.1–32–01(1). In addition to imprisonment, N.D.C.C. § 12.1–32–02 authorized a number of sentencing alternatives, including probation.

[¶ 7] The statutes governing the available terms of incarceration and probation for an N.D.C.C. § 12.1–20–03(1)(d) conviction were amended effective August 1, 2007, after Perales pleaded guilty on December 20, 2006 but before Perales was sentenced on August 17, 2007. *See* 2007

N.D. Sess. Laws ch. 123, §§ 2, 4. The parties did not address the legislative changes in their briefs, but we outline the changes to the gross sexual imposition penalty provision at N.D.C.C. § 12.1–20–03(3) and to the sexual offender probation provision at N.D.C.C. § 12.1–32–06.1(3) to explain which probation provision applied to Perales' initial sentence.

[¶ 8] When Perales pleaded guilty, the version of N.D.C.C. § 12.1–20–03(3)(a) in effect provided an individual was guilty of a class AA felony for engaging in a sexual act with a victim younger than fifteen when the individual was more than five years older than the victim. N.D.C.C. § 12.1–20–03(3)(a) (2005). The effective version of N.D.C.C. § 12.1–32–06.1(3), which did not authorize lifetime supervised probation, provided:

> "If the defendant has pled or been found guilty of a felony sexual offense in violation of chapter 12.1–20, the court shall impose a period of supervised probation of five years to be served after sentencing or incarceration. The court may impose an additional period of supervised probation not to exceed five years...."

N.D.C.C. § 12.1–32–06.1(3) (2005).

[¶ 9] The 2007 amendments to N.D.C.C. § 12.1–20–03(3) and N.D.C.C. § 12.1–32–06.1(3) were part of House Bill 1216, and neither provision has been amended since 2007. *See* 2007 N.D. Sess. Laws ch. 123, §§ 2, 4. The amendments changed the applicable age-in-relation-to-the-victim for gradation of N.D.C.C. § 12.1–20–03(1)(d) convictions. Under the 2007 version of N.D.C.C. § 12.1–20–03(3)(a), an individual was guilty of a class AA felony for engaging in a sexual act with a victim younger than fifteen when the offender was at least twenty-two years of age. Otherwise, the offense was a class A felony. N.D.C.C. § 12.1–20–03(3)(b)

(2007). In addition, the amendments authorized imposition of lifetime supervised probation on class AA felony sexual offenders. The 2007 version of N.D.C.C. § 12.1–32–06.1(3) provided:

> "If the defendant has pled or been found guilty of a felony sexual offense in violation of chapter 12.1–20, the court shall impose at least five years but not more than ten years of supervised probation to be served after sentencing or incarceration. If the defendant has pled or been found guilty of a class AA felony sexual offense in violation of section 12.1–20–03 or 12.1–20–03.1, the court may impose lifetime supervised probation on the defendant...."

[¶ 10] Perales was charged with and pleaded guilty to engaging in a sexual act with a thirteen-year-old girl when he was nineteen years old. Under the statutes in effect prior to the 2007 amendments ("2005 statutes"), Perales' original offense was a class AA felony. *See* N.D.C.C. § 12.1–20–03(3)(a) (2005). Following the 2007 amendments, Perales' original offense was a class A felony. *See* N.D.C.C. § 12.1–20–03(3) (2007).

[¶ 11] Perales does not argue he should have been sentenced under the 2007 statute, and we express no opinion on the issue. *See State v. Cummings*, 386 N.W.2d 468 (N.D.1986). Because it is undisputed that Perales was convicted of and sentenced for class AA felony gross sexual imposition, we apply the 2005 version of N.D.C.C. § 12.1–32–06.1 to determine whether the district court exceeded its authority by ordering Perales to serve additional probation following his second probation revocation. The 2005 version of N.D.C.C. § 12.1–32–06.1 provided, in part:

> "1. Except as provided in this section, the length of the period of probation imposed in conjunction with a sentence to probation or a suspended execution or

deferred imposition of sentence may not extend for more than five years for a felony and two years for a misdemeanor or infraction. . . .

"2. If the defendant has pled or been found guilty of an offense for which the court imposes a sentence of restitution or reparation for damages resulting from the commission of the offense, the court may, following a restitution hearing pursuant to section 12.1–32–08, impose an additional period of probation not to exceed five years.

"3. If the defendant has pled or been found guilty of a felony sexual offense in violation of chapter 12.1–20, the court shall impose a period of supervised probation of five years to be served after sentencing or incarceration. The court may impose an additional period of supervised probation not to exceed five years. . . .

. . . .

"5. In felony cases, in consequence of violation of probation conditions, the court may impose an additional period of probation not to exceed five years. The additional period of probation may follow a period of incarceration if the defendant has not served the maximum period of incarceration available at the time of initial sentencing or deferment." N.D.C.C. § 12.1–32–06.1 (2005).

[¶ 12] Perales argues that under N.D.C.C. § 12.1–32–06.1, the district court was limited to imposing a total of two probationary periods, an initial period and one additional period authorized by subsection (5). He asserts the first probationary period ended when his probation was revoked in 2008 and the second probationary period ended when his probation was revoked in 2012. The State agrees the district court was permitted to impose only one additional probationary period under subsection (5) but argues that following the second probation revocation, the district court could order Perales to complete the unserved portion of a previous probationary term.

■ [¶ 13] Resolving the issue requires interpretation of our probation statutes. "Statutory interpretation is a question of law, fully reviewable on appeal." *Stavig*, 2006 ND 63, ¶ 12, 711 N.W.2d 183. "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears[.]" N.D.C.C. § 1–02–02. When a statute is ambiguous, we may consider extrinsic aids including legislative history to determine a statute's meaning. N.D.C.C. § 1–02–39.

[¶ 14] We first consider how many probationary periods were permitted under N.D.C.C. § 12.1–32–06.1. Under the 2005 version of N.D.C.C. § 12.1–32–06.1, subsection (2) applying to defendants sentenced to restitution, subsection (3) applying to sexual offenders and subsection (5) applying to felony probation violations all authorized the district court to impose "an additional period" of probation. "The same words used twice in the same act are presumed to have the same meaning. . . . However, it is possible to interpret an imprecise term differently in two separate sections of a statute which have different purposes." 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 46:6 at 249–50 (7th ed. 2007); *see Coldwell Banker–First Realty, Inc. v. Meide & Son, Inc.*, 422 N.W.2d 375, 380 (N.D.1988). In the 2005 version of N.D.C.C. § 12.1–32–06.1, subsections (3) and (5) allowing the district court to impose "an additional period" of probation served different purposes. As we explain, subsection (5) allowed imposition of a subsequent probationary period and subsection (3) allowed imposition of an extended initial probationary period.

■ [¶ 15] The parties agree that the meaning of "an additional period" in N.D.C.C. § 12.1–32–06.1(5) was resolved in *State v. Stavig*, 2006 ND 63, 711 N.W.2d 183. In *Stavig*, we considered whether, under N.D.C.C. § 12.1–32–06.1(2), the district court could impose a third probationary period on a defendant sentenced to restitution. We first determined the word "an" was ambiguous because it could mean one probation period or multiple probation periods. *Stavig*, at ¶ 13. Because the statute was ambiguous, we looked to the legislative history of N.D.C.C. § 12.1–32–06.1(2) and (5) and explained:

"The North Dakota Legislative Assembly first enacted N.D.C.C. § 12.1–32–06.1 in 1989. 1989 N.D. Sess. Laws ch. 158, § 3. Subsection 2 was added to N.D.C.C. § 12.1–32–06.1 in 1995. 1995 N.D. Sess. Laws ch. 137, § 1. The legislative history to N.D.C.C. § 12.1–32–06.1(2) reflects the legislature's intent when it enacted the statute. When the bill was heard before to the House and Senate Judiciary Committees, Representative Lyle L. Hanson explained the bill would add five more years of probation to the five years the court could already impose for a felony, extending the total possible probation to ten years. *Hearing on H.B. 1223 Before the H. Judiciary Comm.*, 54th Legis. Sess. (Jan. 16, 1995) (testimony of Lyle L. Hanson, Rep.); *Hearing on H.B. 1223 Before the S. Judiciary Comm.*, 54th Legis. Sess. (Mar. 6, 1995) (testimony of Lyle L. Hanson, Rep.). Testimony for the bill supports the interpretation that the statute imposes only one additional period of probation, not to exceed five years:

'The proposed legislation allows the court to impose an additional period of probation not to exceed five years if it imposes a sentence of restitution or reparation for damages resulting from the offense.

. . . .

'Current law allows the court to impose an additional period of probation not to exceed five years only when a felony probation is revoked.'

*Hearing on H.B. 1223 Before the S. Judiciary Comm.*, 1995 Legis. Sess. (Mar. 6, 1995) (testimony of Warren R. Emmer, Director, Division of Parole and Probation).

"The language of N.D.C.C. § 12.1–32–06.1(2) is identical to N.D.C.C. § 12.1–32–06.1(5), which provides, 'the court may impose an additional period of probation not to exceed five years.' Section 12.1–32–06.1(5) was part of the original enactment of Section 12.1–32–06.1 in 1989. *See* 1989 N.D. Sess. Laws ch. 158, § 3 (section 12.1–32–06.1(5) was section 12.1–32–06.1(3) when originally enacted). The legislative history for N.D.C.C. § 12.1–32–06.1(5) clarifies that the legislature intended probation be extended for only one additional period, not to exceed five years. The bill summary, prepared for the legislature by the Legislative Council, states, 'The bill establishes the *maximum periods* of probation that may be imposed in conjunction with a sentence to probation, or a suspended execution or deferred imposition of sentence.' *Bill Summary for H.B. 1052*, 51st Legis. Sess. (Mar. 21, 1989) (emphasis added).

"The legislative history of N.D.C.C. § 12.1–32–06.1(2) reflects that 'an additional period of probation not to exceed five years' was to mean one additional period of probation. We conclude the 'maximum periods' discussed for N.D.C.C. § 12.1–32–06.1(5) means two probation periods. The other interpretation would permit unlimited extensions of probation, contrary to the legislative history that reflects the legislature in-

tended the maximum length of probation to be ten years. We hold that under N.D.C.C. § 12.1–32–06.1(2), the district court may impose only one additional period of probation not to exceed five years."

*Stavig*, at ¶¶ 14–16. We agree with the parties that our reasoning in *Stavig* applies to felony probation violations and hold that under N.D.C.C. § 12.1–32–06.1(5), the district court may impose only one additional period of probation not exceeding five years.

[¶ 16] Next, we consider the meaning of the 2005 version of N.D.C.C. § 12.1–32–06.1(3) requiring the district court to "impose a period of supervised probation of five years to be served after sentencing or incarceration" and permitting the district court to "impose an additional period of supervised probation not to exceed five years." Subsection (3) was first added to N.D.C.C. § 12.1–32–06.1 in 1995 by Senate Bill 2040. 1995 N.D. Sess. Laws ch. 135, § 2. As originally enacted, subsection (3) applied to defendants guilty of a sexual offense against a minor and permitted the district court to impose on felony offenders "an additional period of probation not to exceed five years if the additional period probation [was] in conjunction with a commitment to a sexual offender treatment or aftercare program." N.D.C.C. § 12.1–32–06.1(3) (1995). Testimony supporting the bill indicated the intent was to allow initial probationary periods longer than those authorized by N.D.C.C. § 12.1–32–06.1(1). Senator Larry Robinson summarized the bill as "extend[ing] the allowable length of probation for a person found guilty of a sexual offense against a minor from five to ten years for a felony...." *Hearing on S.B. 2040 Before the Senate Human Servs. Comm.*, 54th Legis. Sess. (Jan. 9, 1995) (testimony of Larry Robinson, Sen.). Charles R. Placek, of the Division of Parole and Probation, explained why extend-ed probationary periods were necessary for sex offenders:

"The ND Department of Corrections & Rehabilitation supports passage of SB 2040. The Division of Parole and Probation worked with the 1989 legislative session in setting the lengths of probation for felonies at 5 years and misdemeanors at two years. Since that time there has been a great deal of discussion both on a National and State level regarding the correctional handling of Sex Offenders. It has become apparent that Sex Offenders may require longer periods of community supervision than originally addressed in the 1989 session....

"Sex Offenders are different from other offenders due to the large amount of denial that exists with that particular criminal offender. This results in it taking a considerable more amount of time to work with these offenders. Due to the denial issue and difficulty in treating Sex Offenders increased lengths of community supervision should provide the public with more protection.

"You will note that this bill is discretionary and will allow the Court the option of extending the probation period by up to five years for a felony and 2 years for a misdemeanor."

*Hearing on S.B. 2040 Before the House Judiciary Comm.*, 54th Legis. Sess. (Feb. 27, 1995) (testimony of Charles R. Placek, Regional Supervisor, Division of Parole and Probation).

■ [¶ 17] The 2005 Legislature amended N.D.C.C. § 12.1–32–06.1(3) by passing House Bill 1313, which was drafted by a task force convened by the governor to study North Dakota's sex offender laws. The task force recommended enhancing sentences for certain sexual offenders, including mandating a period of supervised probation for all felony sexual

offenders. *Hearing on H.B. 1313 Before the House Judiciary Comm.*, 59th Legis. Sess. (Jan. 25, 2005) (testimony of Duane Houdek, Legal Counsel to Governor's Office); *Hearing on H.B. 1313 Before the Senate Judiciary Comm.*, 59th Legis. Sess. (Feb. 28, 2005) (testimony of Duane Houdek, Legal Counsel to Governor's Office). Based on the recommendations, N.D.C.C. § 12.1–32–06.1(3) was amended to provide "the court shall impose a period of supervised probation of five years to be served after sentencing or incarceration" and "may impose an additional period of supervised probation not to exceed five years." 2005 N.D. Sess. Laws ch. 115, § 4. Testimony in support of the bill indicated the intent was to require the district court to impose a minimum initial five-year probationary term but leave the initial available maximum ten-year term unchanged:

> "The language ... creates a mandatory period of supervised probation to be served after incarceration for a felony sexual offense. Five years supervised probation is the minimum; up to five additional years may be imposed at the discretion of the court."

*Hearing on H.B. 1313 Before the House Judiciary Comm.*, 59th Legis. Sess. (Jan. 25, 2005) (testimony of Jonathan Byers, Assistant Attorney General); *Hearing on H.B. 1313 Before the Senate Judiciary Comm.*, 59th Legis. Sess. (Feb. 28, 2005) (testimony of Jonathan Byers, Assistant Attorney General). The legislative history of N.D.C.C. § 12.1–32–06.1(3) indicates the provision was intended to permit the district court to impose initial periods of probation longer than the five-year and two-year periods authorized by N.D.C.C. § 12.1–32–06.1(1). We conclude that under the 2005 version of N.D.C.C. § 12.1–32–06.1(3), the district court was authorized to impose one probationary period of at least five but no more than ten years

when Perales was initially sentenced. In addition, under N.D.C.C. § 12.1–32–06.1(5), the district court was authorized to impose one additional period of no more than five years when Perales violated the terms of his probation.

[¶ 18] Having concluded the district court was limited to imposing an initial five-to-ten-year probationary period and a second five-year probationary period, we consider whether the district court could impose any additional probation following the second probation revocation. Perales asserts the district court could not impose additional probation because his initial probationary period ended when his probation was revoked and he was resentenced to incarceration in 2008 and because the second probationary period ended when his probation was revoked and he was resentenced to incarceration in 2012. The State responds that although Perales could not be sentenced to an additional five-year probationary period, the district court could order Perales to complete the unserved portion of his second five-year probationary term upon release from incarceration.

[¶ 19] After finding a defendant violated a probation condition, "the court may continue the defendant on the existing probation, with or without modifying or enlarging the conditions, *or* may revoke the probation and impose any other sentence that was available under section 12.1–32–02 or 12.1–32–09 at the time of initial sentencing or deferment...." N.D.C.C. § 12.1–32–07(6) (emphasis added); *see also* N.D.R.Crim.P. 32(f)(3)(B) (providing that upon finding a probation violation, a district court may "(i) revoke an order suspending a sentence or an order suspending the imposition of sentence; *or* (ii) continue probation on the same or different conditions") (emphasis added).

"The word 'or' is disjunctive in nature and ordinarily indicates an alternative between different things or actions." *State ex rel. Stenehjem v. FreeEats.com, Inc.*, 2006 ND 84, ¶ 14, 712 N.W.2d 828. The plain language of N.D.C.C. § 12.1–32–07(6) provides the district court with the distinct alternatives of continuing existing probation or revoking probation and resentencing the defendant. Therefore, we conclude that when the district court revokes probation and resentences a defendant, the existing probationary period ends and the district court may not order the defendant to complete the unserved portion of the existing probationary term.

[¶ 20] Our interpretation of N.D.C.C. § 12.1–32–07(6) is supported by its legislative history. The provision was originally enacted during the 1973 revision of our criminal code and was modeled after Section 3102(3) of the 1970 Study Draft of the proposed Federal Criminal Code. 1973 N.D. Sess. Laws ch. 116, § 31. Comments to Section 3102(3) indicate that resentencing a defendant to incarceration is a distinct alternative to probation that should be imposed when continuing probation is not appropriate:

"Subsection (3) deals with modification and enlargement of conditions, and revocation....

"Subsection (3) makes it clear that the entire range of sentences originally available remains available in the event of a revocation. As noted, this would not change present law in cases in which the judge suspends the imposition of sentence, but it might in cases in which he suspends its execution. The reason for such a provision is the belief that it is unsound for the judge to decide at the time of sentencing what he will do if the defendant does not abide by the conditions of probation. This decision should await a chance to evaluate what in fact has occurred. Nothing is lost by the wait in the sense of alternatives open to the judge, and much is gained in the sense that the judge is now able to operate on fresh facts.

"The proposal also contains the implication that imprisonment should not be the automatic response to the violation of a condition, but that other recourse should be considered. Continuation on the existing sentence with a warning might be appropriate if the violation were only minor; a warning accompanied by an enlargement of conditions might be appropriate if the violation were more serious. Imprisonment nevertheless remains in the background as the ultimate sanction in cases where it is deemed appropriate."

*II Working Papers of the National Commission on Reform of Federal Criminal Laws* 1309 (1970) (footnote omitted).

[¶ 21] Perales was sentenced to two probationary periods prior to his 2012 revocation. The first five-year probationary period was part of Perales' initial sentence as authorized by N.D.C.C. § 12.1–32–06.1(3) and ended when his probation was revoked in 2008. The second five-year probationary period was part of Perales' sentence following his first revocation as authorized by N.D.C.C. § 12.1–32–06.1(5) and ended when his probation was revoked in 2012. Perales served the two probation periods authorized by N.D.C.C. § 12.1–32–06.1 prior to his 2012 resentencing, and the district court exceeded its authority by imposing a third period of probation. Because the sentence was illegal, we remand for resentencing.

### III

[¶ 22] Perales argues the sentence of fourteen years incarceration violated the United States Constitution's Eighth Amendment prohibition against cruel and

unusual punishment because it is grossly disproportionate to his original offense. We need not decide and express no opinion whether the prison sentence was cruel and unusual because we remand for resentencing based on our disposition of the first issue.

## IV

[¶ 23] We conclude the district court erred by ordering Perales to serve additional probation following his release. We reverse the amended criminal judgment and remand for further proceedings consistent with this opinion.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.